UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION

| | | |
|---|---|---|
| **ALEX PEYKOFF AND SATISFIED LIFE FOUNDATION, INC.** § § | | |
| *Plaintiff,* § § | | |
| **v.** § § | | **Case No. 4:23-cv-404-O** |
| **CHARRISSA CAWLEY and CBCG, LLC D/B/A GAME CHANGER PUBLISHING,** § § § § | | |
| *Defendants.* § | | |

## DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL

COMES NOW Defendants Charrissa Cawley and CBCG, LLC ("Defendants") to reply in support of their Motion to Dismiss under Rule 12 ["Motion" Doc No. 8] and address errors and omissions present in both Plaintiff's First Amended Complaint ["Complaint" Doc No. 11] and Plaintiff's Response to Defendants' Motion to Dismiss ["Response" Doc No. 12].

## CONTENTS OF REPLY

A.  Plaintiffs have not established Peykoff's standing to bring suit. ............................................. 3
B.  Peykoff has still failed to properly plead his claims, so they should be dismissed. ................ 4
    i.  Breach of Partnership Agreement ........................................................................................ 4
    ii.  Breach of Fiduciary Duty Claim -- Peykoff ........................................................................ 7
    iii. Tortious Interference with Business Relationships -- Peykoff ........................................... 9
    iv.  Business Disparagement – Peykoff and Foundation ......................................................... 10
    v.  Negligent Misrepresentations -- Peykoff .......................................................................... 12

## INDEX OF AUTHORITIES

**Cases**
*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) .................................................................................. 5
*Bass v. United Dev. Funding, L.P.*, No. 05-18-00752-CV,
    2019 Tex. App. LEXIS 7421 (Tex. App.—Dallas Aug. 21, 2019, pet. denied) ................... 9
*C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690 (5th Cir. 2001) .......................................... 10
*Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167 (Tex. 2003) ...................................... 3
*GE Oil & Gas, Inc. v. Turbine Generation Servs* 6:14-00760 (W.D. La. Feb. 11, 2015) .............. 6
*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir.2007) ................................................. 5
*McCamish v. F. E. Appling Interests*, 991 S.W.2d 787 (Tex. 1999) ........................................... 12
*Parr v. Forest River, Inc.*, 2014 WL 12588299 (W.D. Tex. Nov. 17, 2014) ................................. 8
*Reed v. Marshall*, No. H-21-3942, 22022 WL 799765 (S.D. Tex. Mar. 16, 2022) ....................... 9
*Tubbs v. Nicol*, 675 F. App'x 437 (5th Cir. 2017) .......................................................................... 3
*Vigo v. Reed*, No. 3:11-CV-2044-G, 2012 WL 5363429 (N.D. Tex. Nov. 1, 2012) .............. 10, 11

**Statutes**
Tex. Bus. Org. Code § 152.052(a) .................................................................................................. 4
Tex. Civ. Prac. & Rem. Code § 73.052 ........................................................................................... 3

**A.      Plaintiffs have not established Peykoff's standing to bring suit.**

1.      Plaintiff brings this case to federal court based on diversity, requiring a colorable claim of at least $75,000. Even in his amended complaint, Plaintiff has alleged no facts to suggest that he has sustained any damages at all, on any of his claims, even if the Court accepted all his factual allegations as true.

2.      Peykoff alleges a business disparagement claim. The publication of a disparaging statement concerning the product of another is actionable when (1) the statement is false, (2) published with malice, (3) with the intent that the publication cause pecuniary loss or the reasonable recognition that it will, and (4) pecuniary loss does in fact result. *See Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (listing elements as the publication of false and disparaging information with malice, and without privilege, causing special damages). In the facts at bar, Peykoff has no product or service that has allegedly been disparaged as he is not a business entity. Consequently, he has no standing to bring this claim. Additionally, to the extent that Peykoff maintains an action for defamation, which he has not plead, he has not met the conditions precedent required by Texas law:

> "a plaintiff must comply with the requirements of the Defamation Mitigation Act ("DMA"). The stated purpose of the DMA is "to provide a method for a person who has been defamed . . . to mitigate any perceived damage or injury." Tex. Civ. Prac. & Rem. Code § 73.052. The DMA covers "all publications," *id.* at § 73.054(b), and provides that "[a] person may maintain an action for defamation only if . . . the person has made a timely and sufficient request for correction, clarification, or retraction from the defendant." *Id.* at § 73.055(a).

*Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017).

3.      As Peykoff in his individual capacity does not offer products or services within the meaning of Texas business disparagement law and has made no demand for a retraction, this case must be abated until he complies with the DMA.

**B.      Peykoff has still failed to properly plead his claims, so they should be dismissed.**

    *i.  Breach of Partnership Agreement*

4.      Plaintiffs allege in their Response (p. 9) that "with respect to Peykoff's claim for breach of the partnership agreement, Defendants' challenge clearly is one of substance, not of pleading."

5.      On the contrary, Plaintiffs' claim for breach of a partnership agreement is impermissibly vague and unsupportable in light of the circumstances of this case, even in the revised complaint.

6.      Plaintiffs assert that the parties' activities described at para. 25 of the Complaint "indicate that there was a mutual intention" between the parties in holding a "Satisfied Life" event. Yet the events described give no details of even a single fact in support of this conclusion.

7.      Plaintiffs allege that the parties "agreed to partner together to host a multiday entrepreneurial event" in Mexico but fail to allege facts regarding any details beyond a conclusory allegation that the agreement existed. The suggestion that the hypothetical agreement concerned a multiday event is not a fact that leads inevitably to a conclusion that the parties were partners.

8.      At no point do Plaintiffs allege any fact which, if believed, would suggest that Cawley was more than a consultant hired for her expertise. Critically, Plaintiffs' Response completely ignores the fact that even if all the dubious facts that ground the complaint are taken as true, there is still no theory under which Cawley can be said to have entered a partnership and be liable thereunder. As outlined in Defendant's Motion, Texas law governing partnership creation expressly lists five relevant factors:

> Factors indicating that persons have created a partnership include the persons': (1) receipt or right to receive a share of profits of the business; (2) expression of an intent to be partners in the business; (3) participation or right to participate in control of the business; (4) agreement to share or sharing: (A) losses of the business; or (B) liability for claims by third parties against the business; and (5) agreement to contribute or contributing money or property to the business.

Tex. Bus. Org. Code § 152.052(a).

9. Plaintiffs conclusorily allege in their Complaint at para.12 that Plaintiffs and Defendants all expressed an intent to be partners in the joint enterprise, agreed to share all profits from the Satisfied Life event, and jointly participated in control of the venture. At no point does Peykoff provide anything more than these conclusory claims; he never alleges a supporting specific allegation to claim that Cawley was taking a partner's role in the events.

10. Finally, Plaintiffs have chosen to allege a partnership with two defendants: Cris Cawley, and her company, Game Changer Publishing. Plaintiffs have not shown any specific action taken by either defendant in his Amended Complaint from which this Court could determine that either is liable for any specific action or damage. An event can lose money without anyone involved breaching a partnership agreement.

11. Defendants recognize that a disagreement over the merits of the case belongs in a motion for summary judgment, and this Court is obligated to accept all well-pleaded allegations in adjudicating a motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotation marks omitted). That duty does not extend to blind acceptance of conclusory allegations masquerading as facts. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Peykoff has had two opportunities to provide any supporting fact that this Court would be obligated to accept in adjudicating Defendants' motion to dismiss, and as he has not done so, his claim to a breach of a partnership agreement should be denied.

12. Additionally, Defendants would highlight *GE Oil & Gas, Inc. v. Turbine Generation Servs,* cited in Plaintiffs' Response: "[t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." This precedent bolsters Defendant's assertion that Peykoff's

declaration militates *against* granting a motion to dismiss. *GE Oil & Gas, Inc. v. Turbine Generation Servs* 6:14-00760, 7 (W.D. La. Feb. 11, 2015).

13.     Plaintiffs would have this court believe that the parties to this suit considered and agreed on each factor contributing to partnership formation when forming the "agreement" for the Satisfied Life event, though Plaintiffs have not begun to provide even supporting facts that any of the five factors are present in this case.

14.     However, Plaintiffs' analysis is belied by Mr. Peykoff's declaration which describes the parties' agreement in vastly more informal and conclusory terms. He writes,

> 4.     After my book was published, I continued to work with Ms. Cawley and Game Changer to promote my book and my brand, including work that my foundation, the Satisfied Life, was doing. As relevant to the instant dispute, I decided to partner with Ms. Cawley to host an entrepreneurial event to which world business leaders would be invited to attend and connect with one another in 2022 at a resort in Punta Mita, Mexico.
>
> 5.     This event, entitled "The Satisfied Life Mastermind & Movement," was an event that I agreed to put on in partnership with Ms. Cawley on the understanding that she could use her large network of clients to make the event a success. While my foundation, the Satisfied Life, Inc., was in operation at the same time and stood to benefit should the event prove successful, I funded the event and am the person who lost money on the venture after Ms. Cawley refused to share losses when the event did not realize a profit.

15.     Peykoff speaks of his intent to partner with Cawley but says nothing of intent on her part. It speaks of leveraging her client network, and Peykoff's own displeasure at Cawley's refusal to share losses when the event went sour, but fails to evince any intent by Cawley of 1) receipt or right to receive a share of profits of the business; (2) any expression of an intent to be partners in the business by Cawley; (3) any right to participate in control of the business by Cawley; (4) any

agreement to share or sharing (A) losses of the business;[1] or (B) liability for claims by third parties against the business; and (5) any agreement to contribute or contributing money or property to the business. Peykoff testifies that Cawley contributed client services (which is not one of the five factors), but not money or property to the venture.

16. In short, Cawley was hired to consult, which she did, and even in the light most favorable to Plaintiffs, their conclusory statements do not add up to a claim.

### ii. Breach of Fiduciary Duty Claim -- Peykoff

17. Peykoff asserts a claim for breach of fiduciary duty based on his imaginary partnership with Defendants and ignores the fact that the event was held to benefit the Satisfied Life Foundation and not Peykoff.

18. Peykoff has alleged that Defendants breached a fiduciary duty by refusing to reimburse him for expenses he paid on behalf of the partnership, again pretending that the event was to benefit a partnership comprising himself and Cawley instead of the Satisfied Life Foundation via a consultant arrangement.

19. Even ignoring disputed facts, Defendants assert that the thin facts alleged are insufficient to support a claim. Even if Cawley refused to pay money to reimburse Peykoff for expenses, such a refusal would lead to a breach of contract claim, at best. Refusing to pay a claim is not a breach of a fiduciary duty.

20. Additionally, Peykoff's allegations regarding competition from the alleged partnership is nothing more than rote element language; Peykoff gives no details and alleges no facts to show the Court what constitutes the "false correspondence and taking other actions to drive Satisfied-Life clients and potential clients to Defendants' alternatives services set up in the wake of the Satisfied

---

[1] Indeed, Peykoff's dissatisfaction as expressed in his Declaration stems from his failure to form such an agreement between the parties or even any acknowledgement that a partnership existed.

Life event." As already discussed, Peykoff's alleged factual support remains conclusory recitations of elements bereft of any supporting factual basis.

21.     Lastly, Peykoff alleges mysterious "damages" in para. 37 of his Complaint, leaving it to the Court to guess what those might be. Again, this is conclusory language.

22.     Peykoff has provided none of the details that this Court should be able to see without delving into the facts, and because his alleged facts are not facts, but conclusions, a fiduciary duty claim is sustainable. Peykoff inappropriately cites to the employee-employer case, *Parr v. Forest River, Inc.*, 2014 WL 12588299, at *3 (W.D. Tex. Nov. 17, 2014), arguing that "reciting the elements of a breach of fiduciary duty claim and holding that plaintiffs' factual recitations, taken as true, were sufficient to withstand a pleadings challenge".  However, in Parr, the trial court was given significant details that it used in its analysis. Peykoff has not given any such details to this Court:

> Here, taking Forest River's factual assertions as true, the Court finds it is plausible Parr was in a fiduciary relationship with Forest River. There is no dispute Parr was formerly employed as the General Manager of the Waco [*8]  Plant and held that position ever since Forest River acquired the plant. Furthermore, Forest River claims Parr had immense responsibility in running the Waco Plant's daily operations, including its business transactions with third parties, its overall financial performance, and its safety. Indeed, as Forest River explains, "[t]here was no one in Texas with greater responsibility than [Parr]." Doc. 18 at 9. In viewing these facts in favor of Forest River, it has pled enough facts to support that a fiduciary relationship existed between Parr and Forest River.

*Parr v. Forest River, Inc.*, at *7-8. This pattern continues throughout Judge Smith's opinion, as he discusses the dispute in significant detail, e.g., "These injuries causing Forest River financial loss due to Parr's direct misappropriation and/or his failure to supervise those who were misappropriating its assets, damaging Forest River's property, and giving away Forest River's assets at no cost." Peykoff has failed to match the level of detail provided in the case he cites. Having established the standard himself, his claims should be dismissed for failure to meet it.

### iii. *Tortious Interference with Business Relationships -- Peykoff*

23. To prevail on tortious interference with business relationship claims, a plaintiff must show:

> (1) there was a reasonable probability that the parties would have entered into a business relationship, (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring, (3) the defendant acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct, and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

*Bass v. United Dev. Funding, L.P.*, No. 05-18-00752-CV, 2019 Tex. App. LEXIS 7421, at *71 (Tex. App.—Dallas Aug. 21, 2019, pet. denied).

24. Defendants assert, as stated previously, that the Satisfied Life Foundation was the intended beneficiary of Cawley's work, and Peykoff has no standing to assert any claim against Defendant for the work performed in connection with the Satisfied Life Foundation.

25. Irrespective of Peykoff's flailing attempts to argue for Defendants' liability, Peykoff asserts this claim with a total of five sentences that do not describe what false representations were made by Defendants, when and how these statements were published, or how Defendants committed an independent tortious act which prevented a relationship to accrue, or what damages occurred, or any description of any missed business opportunity. Besides the lack of standing, Plaintiffs have not provided this Court sufficient allegations to sustain this claim.

26. Plaintiff's citation to *Reed v. Marshall*, No. H-21-3942, 22022 WL 799765, at *2-3 (S.D. Tex. Mar. 16, 2022) is inapposite because that case included well-pleaded facts, and the court opined that Noerr-Pennington doctrine dismissals should not be the basis of early dismissals:

> (2) "Defendants claim that (1) they had a contract with Williams; (2) Plaintiff willfully and intentionally told Williams, promoters, and radio stations that Defendants had no rights to the Mark; (3) as a result of Plaintiff's communications, Defendants lost their opportunity to participate in a tour that Williams had planned to involve them in; and (4) they suffered damages as a result. Defendants' Counterclaim thus survives the Rule 12(b)(6) standard. Defendants also allege a claim for tortious interference with prospective business relations because they contend that they have lost other opportunities to perform as a result of Plaintiff's interference."

*Id.,* at *5.

27.     In *Reed*, the cross claim described specific statements and an entire fact section of specific allegations in support of its claims, and a specific opportunity that was missed due to the plaintiff's conduct.[2] These specific allegations distinguish Reed from the present case.

    *iv.  Business Disparagement – Peykoff and Foundation*

28.     Peykoff alleges a six-sentence claim for business disparagement that has an even smaller number of facts alleged than those in the business relationship claim.

29.     The parties agree that, as Plaintiff's Response states, "[t]o recover for the tort of business disparagement under Texas law, a plaintiff must prove 'publication by the defendant of disparaging words, falsity, malice, lack of privilege, and special damages." *Vigo v. Reed*, No. 3:11-CV-2044-G, 2012 WL 5363429, at *3 (N.D. Tex. Nov. 1, 2012) (quoting *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 694 (5th Cir. 2001)).

30.     However, Plaintiffs fail to detail any false allegation by Defendants, how the alleged statements resulted in damages, or allege malice, stating:

> 15.     Further, after the failed event in Mexico, Defendant Cawley sent false statements to Satisfied-Life clients indicating that Mr. Peykoff was stepping aside from the Satisfied Life Mastermind venture, but that Ms. Cawley would continue serving those clients with future entrepreneurial events and trainings.
>
> 16.     This correspondence was neither accurate nor truthful, either with respect to Mr. Peykoff's role in the Satisfied Life business or Mr. Peykoff's ability to continue providing entrepreneurial services in the future.
>
> 17.     To the contrary, the correspondence falsely suggested that only Defendants would continue to provide such services and training in the future under the new brand name "The One Mastermind."
>
> 18.     In addition, Defendants changed important Satisfied Life branding on key social media platforms without Mr. Peykoff's permission or consent, creating a situation where clients and potential clients would be driven to Defendants' services to the exclusion of Mr. Peykoff and the Satisfied Life venture.

---

[2] The Reed counterclaim is provided for the Court as Exhibit 1.

31.     Nothing in this fact pattern evinces disparaging information. Even if the assertion that Peykoff "stepping aside" was false or mistaken, that fact alone is not disparaging, nor is there sufficient detail concerning alterations to social media to indicate that any information was changed to be either false or disparaging. Thus, Plaintiffs' pleading fails the first element of the business disparagement claim on its face, as pled.

32.     Even more dispositive, Peykoff fails to allege or even allude to any malice on the part of Defendants, so Plaintiffs have also failed to plead the second element of disparagement.

33.     Finally, nothing in Plaintiffs' facts articulates any damages specially or directly traceable to the alleged disparagement. Indeed, in para. 42, all Plaintiff can offer is a blanket assertion that Peykoff suffered special damages, absent any articulation of an amount or any enumeration of client losses from whence the damages originate.

34.     In sum, Plaintiffs' claim for business disparagement is insufficiently supported by allegations to make a claim and should be dismissed.

35.     Ironically, Plaintiffs rely on *Vigo v. Reed*, which militates in Defendants' favor, as the court upheld Plaintiff's pleading of proof of special damages in a business-disparagement claim because plaintiff established pecuniary loss that had been realized….as in the case of lost sales. No. 3:11-CV-2044-G, 2012 WL 5363429, at *4 (N.D. Tex. Nov. 1, 2012) at *4. Here, on the contrary, Plaintiff's complaint makes a bare assertion at para. 47, "Defendant Cawley's publication caused Plaintiffs Peykoff and SLF to suffer special damages." This cannot meet the minimum pleading standards under Plaintiffs' own case law.

### v.   *Negligent Misrepresentations -- Peykoff*

36.   Restatement (Second) of Torts § 552(1) provides:

> One who, in the course of his business, profession or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*McCamish v. F. E. Appling Interests*, 991 S.W.2d 787, 788 (Tex. 1999).

37.   Peykoff has not described what specific false information has been provided to others that was communicated without reasonable care or competence. Nor has he even begun to describe any reliance on Defendants' allegedly false information.

38.   Furthermore, Peykoff has not articulated any pecuniary loss to himself caused by justifiable reliance on false information provided by Defendants to third parties. These missing elements militate for dismissal of Peykoff's claim for negligent misrepresentations.

## PRAYER

Even in his Amended Complaint, Peykoff has failed to allege sufficient facts to rise to the "well-pleaded" requirement, and in some of his claims, failed to even badly allege the elements of his claims, e.g., no allegation of malice to support his business disparagement claim.

Defendants ask that the Court dismiss Plaintiffs' claims outright, and in the alternative, abate this case until Plaintiffs sends his retraction letter as required for defamation claims to be brought in Texas and amend his pleading to add specificity so that the Defendants can recognize what claim is made against which Defendant.

Defendants also seek all other remedies to which they are found to be entitled.

Respectfully submitted,

> */s/ Warren V. Norred*
> Warren V. Norred, Texas Bar No. 24045094, wnorred@norredlaw.com
> Norred Law, PLLC; 515 E. Border St., Arlington, TX, 76010
> Attorney for Defendants

**Certificate of Service:** I certify that on June 23, 2023, this reply was served on Counsel for Alex Peykoff and the Satisfied Life Foundation, Brandon Crisp, bcrisp@terrazaspllc.com and Benton Williams II Benton.williams@bentonwilliamspllc.com via ECF.

> */s/ Warren V. Norred*
> Warren V. Norred